The final case today will be RETRACTABLE TECH v. BECTON DICKINSON Mr. Lee.  May it please the Court. My name is Bill Lee and together with my partner, Bill McElwain, I represent Beckton Dickinson. The patents at issue on this appeal concern retractable syringes and arise in a very crowded field of prior art. There are, as the Court knows, many, many prior art retractable syringes that existed before the couple that the Chief Judge has in your hands. As a result of this crowded field of art, the claims at issue on this appeal are very specific and they are directed to a very specific type of a retractable syringe. The claims at issue are directed to a retractable syringe with a separate retainer member, a retractable syringe that operates by the release of friction, a retractable syringe that has a single body. In contrast, the BD products the jury found to infringe operate by using a plunger that penetrates and breaks a single needle holder into pieces. Precisely what was described in the McGarry patent for the Patent Office, precisely what this specification says is different than the patent in suit. Do I understand the McGarry patent was never operable? We made it operable, Your Honor. We purchased the McGarry patent. We used the McGarry patent. The 1 milliliter and the 3 milliliter syringes are based upon McGarry. So I think the answer is, did McGarry do it? No. Did we do it? Yes. And the key here, Your Honor, is that McGarry is based upon having a single piece needle holder that is penetrated and broken or cut, depending on which term you'd like to use. But that is precisely what is being distinguished in the specification in the claims, and that's precisely what we do. In other words, your product has a two-step, two-piece body? Our product has a one-piece body. The claims require a two-piece, or two or three, depending on how you count them. Your trouble there, of course, Mr. Lee, is that there are some very specific dependent claims that recite a one-piece body, the only basis for them being dependent. And so this case falls right in the same category as Phillips, where the claim differentiation rule suggests that the language of the broader claim must not be limited to a one-piece body. Well, let me distinguish two issues, Your Honor. One is, and I'll come back to it, because I think I'd like to make it the focus of what I addressed, which is this separate retainer member. That is not the claim differentiation argument which Your Honor has just identified. It doesn't apply to that. But to answer Your Honor's question, there are two claim differentiation arguments made as to the single body. One is based upon the unasserted claims of the 011 patent, and each of those claims, if Your Honor considers them, the dependent claims, have additional requirements in terms of the method of assembly of the syringe that would distinguish those claims from the independent claims. The two claims of the patent issue that RTI relies upon to make the claim differentiation argument are indisputably claims that were added in prosecution after our product came to market. And as this Court held in ICU Medical, whatever claim differentiation argument, it just says that there were added claims. And the claim 14 of the 224 and claim 57 of the 224 were added? I think they were there from the outset. No. The claims that they're relying upon for their claim differentiation argument within the 224 patent were claims that were added after our product was on the market. Take it. In both cases, Your Honor. So if you take the claim differentiation argument on the one-piece syringe body, they fall into two categories, an unasserted patent where there are additional limitations in the claim that would distinguish the dependent from the independent, and claims that were added after the BD product was put on the market. But in any event, Your Honor, those don't apply to the retainer member, only to the single body. And the retainer member is critical because there are three embodiments. How do you get around laryngeal mask, which we did just last year, and had exactly the same factual situation? You had a back piece and an inner tube that were recited as different elements of the claim, but they were molded together in the accused product. And this Court found that the claim does not preclude a single molding, and that the claim had both structures, they were just molded together. Your Honor, there are two distinctions, one legal, one factual. The legal distinction is that I think the principle that operates here is this Court's decision in the Becton-Dickinson case a year ago, where you held against Becton-Dickinson, I lost. And the Court said where the claim lists elements separately, those elements require distinct components. Factually, we're not, as they have suggested at their brief, two parts that are molded together. Ours is a single piece. It's a single piece needle holder. And this becomes important because of two things, Your Honor. If the Court considers the claims of the patent, all of the claims, with one exception, and I'm going to come to that one, that's claim 25 of the 077, all of the claims require a retractable member and a non-retractable member. They require a retainer member that is separate from the needle holder. They require that they be capable of being coupled, uncoupled, released, or severed. So the claims themselves are requiring two separate pieces. But then when you get into this. They have two separate elements. You have the retainer member and the needle holder, both of which are present in your device. The only question is, can you mold them together? And the answer is, laryngeal mask, yes. Your Honor, I think laryngeal mask is specific to the facts and the claims there, as this one is, too. These are not separate pieces that are molded together. These are a single piece. Then it's doing exactly the two single piece functions of a needle holder and a retainer member. Your Honor, I think the answer to that, and the reason this is specific to this case, is at column 5 of the 224 patent, line 24 to 26. There are three embodiments described in this patent. The third embodiment is a single piece needle holder, which is what we have. The specification specifically distinguishes the three. There is a two piece where you have a separate retainer member and a separate needle holder, and frictional forces are operating to hold them together. You have one, figure 8, where there's a tack weld on one side, but frictional forces on the other. And then the third is what's at column 5 of the 224 patent, line 24 to 26. And what the patentee says is, this is a different embodiment. This is the one that is a single piece, which is what we have. What's important about that, Your Honor, is that's never claimed. There are three embodiments. Two are claimed. There is no dispute that the embodiment described in those two lines, which is then depicted in claims 5 to 7, figures 5 to 7, I apologize. It is claimed. It is not claimed. It's not claimed. Well, it's claimed if we allow those to be molded together. But, Your Honor, if you allow them to be molded together. Laryngeal mask says they're claimed. But, Your Honor, there's both a factual problem and a legal problem. The specification here is different than laryngeal mask. And the specification here is distinguishing between a single-piece body and a multiple-piece body. Is there any language that says specifically you can't put these things together? I mean, you can't. They're claiming a structure, yes. But they're not at any point saying these structures can't be molded together. Think of all the patents in the world that would be easily and simply evaded by that tactic of just going back and we'll put together. We'll find any two elements of this claim that can be molded together and we've escaped infringement. Your Honor, the answer is in the summary of the invention and the specification, where they say that they have a two-piece device that requires, that relies upon frictional and clamping forces between these two things. If you mold them together, you're no longer relying upon frictional and clamping forces. That's important for two reasons. It's not just that this is what the specification says. This is how the specification is distinguishing itself from the single-piece devices that existed before. And that's why, if we step back, Your Honor, and I think this is why it's specification and claim specific. The specification describes at least two, three embodiments. Two have two separate pieces and, according to the specification, rely upon frictional forces. They can't be molded together. A second is a single piece. Could that be molded together? Possibly. But that is the unclaimed embodiment specifically. In fact, Your Honor, the only place, the only place that embodiment is claimed is claim 25 of the 077 patent. And let me move briefly to the validity of that issue in my remaining time before rebuttal because I think it answers your question. Your Honor, this one is claiming without the separate retainer member requirement. What do we know from the two briefs? We know that every single limitation in that claim is conceded to be in the McGarry patent, the other patents, right, press, and without a doubt, every single limitation except for the question of whether the, when the end of the syringe goes into the top, does it lock or does it not lock? What we really know here, Mr. Lee, is you lost before a jury. If you were so confident of this claim construction, you would have taken summary judgment and come up here years ago, right? We actually, Your Honor, we did ask for summary judgment. We did ask for summary judgment on No, no. You'd have to concede summary judgment of non-infringement and come up. No, Your Honor. There are two answers to that question. We did move for summary judgment on our behalf. I still think, as we say to Your Honor, it should have been granted. The second thing, though, Your Honor, is even under their claim interpretation, which is entirely functional, has two functional requirements, as a matter of law, there's no dispute about how our structure operates. And the best indication to the Court is this. The second functional requirement is that the frictional forces that clamp be released. But my point is, if you were so confident of your claim construction, you could have conceded infringement years ago, not gone to the trial, and we would have heard this argument years ago, and you would have won or lost. But, of course, you didn't. You said, well, let's go to the jury. You went to the jury. You lost. You lost big. And now you want to come back and re-argue what you didn't have the courage to argue before. Should we construe it? Should we look at the procedures in that realistic way? The answer, Your Honor, is no. Okay. And let me give you two reasons why. The first thing is, we didn't lose big. There was a $75 million damage claim here. Oh, okay. Well, then you maybe won big, and why are you here? Your Honor, because $5 million is still, by my pocketbook, a lot of money. Okay. The second thing is this, Your Honor. We win even under their claim interpretation, and that's why we went to verdict. And to not use all my rebuttal time, if the Court compares the two figures at pages 45 and 47 of our brief, you will see that the only thing they told the jury was released, right? Never moves. Never moves. Not an inch, not a millimeter, not a nanometer. It never moves. So we had the courage to pursue the correct claim interpretation, and, Your Honor, coming to this Court, we're not giving you a, well, if this, then that, then valid, right? The correct claim interpretation is separate retainer member, right, for these claims. The correct interpretation is single body. And then, to make my last point, on the validity of the one claim that I'm going to make, I'm going to say that everything in that single pieceholder is conceded to be in the prior art, except for the question of whether there's a lock at the back. The answer to the question of whether that's required is in Claims 25 and 28. 25, the claim in issue, doesn't require it. Claim 28, the dependent claim does. Claim 25 has to be brought broader. This claim is either anticipated or it's certainly rendered obvious if you include the power of pen. Thank you, Your Honor. Thank you. We'll return to Mr. Leahy's entire rebuttal time, so if you could give Mr. Hardin an additional three minutes, he needs to use it. Thank you, Your Honor. Roy Hardin. Excuse me one second while we get the time right. She's adding time to you there. But only if you need it. Only if you need it. That's right. Here we go. Eighteen minutes. There we go. If you'd proceed, Mr. Hardin, excuse me for the delay. Thank you, Your Honor. Roy Hardin for Retractable Technologies. After six years of trial and error, Tom Shaw, working essentially in a garage, figured out how to make the first usable, practical, retractable syringe, Your Honor has one at the bench, that when activated would take the needle directly out of the bottle, virtually eliminating the chance of accidental needle stick. He filed his patent application in May of 1995. And while considering how to make that needle, a thought struck him. He thought, well, what I've described is something that has a retainer member and a needle holder with a frictional interface where the friction is what gets pushed off and released. But he was in a manufacturing facility at the time. If someone would use my concept and simply bridge that retainer member to the needle holder and then fracture, separate, or otherwise separate that bridge, I could use my exact structure, my same claimed invention, and get the same advantage. So what did he do? In September, he filed in May. In September, just as that thought occurred to him, he called his lawyer and did what was appropriate. He filed a continuation patent application. And it is that invention that brings us here this morning. It is that invention that Beckman Dickinson incorporated into the infringing product. Now, you're defending the plain construction that it is not limited to one piece. I am. But that's what the summary of the invention says. The Ceron structure features a one-piece hollow outer body. Let me skip to that. I was talking about the retainer-needle holder arrangement. The one-piece body is a separate issue, but I'll be glad to direct it. But that's what I was asking about. Okay. The one-piece body, this specification has issued three or four different patents. There are various goals and objectives and, indeed, inventions in the claims in this application. But the specification that relates to the particular claims says what it says. It also says, in talking about the background, one of the problems with the Ceron structure is that it has such a number and complexity of parts. Prior art frequently has a two-piece barrel. And then, as I mentioned, the summary of the invention states that the structure is a one-piece hollow body. Does frequently mean it might not? Yes, Your Honor, it means that. And also, with due respect, Judge Lurie, the criticism is then explained that for two-piece barrels, if it's a construction where one is having to pass a sharp needle through a first piece in order to compress the spring to get retraction, that's a hard thing to do. So it was a two-piece barrel construction where this particular aspect of manufacture was present that was being criticized. Certainly not all two-piece barrels. And, as the Court has already noted, in the very first application, the claims, which are part of the specification, after all, the claims are part of the specification, had claims to both a hollow syringe body and a single-piece hollow syringe body. But not a multiple-piece hollow syringe body? No, Your Honor. Does the specification have any disclosure of a body with more than one piece? It does not, Your Honor. But you know what? Plain meaning should rule these things, and this Court has said that. This pen could be molded as a single piece. This pen has two pieces that are screwed together, could have pieces that were snapped or glued together. I would contend that someone skilled in the art would understand this to be a body, a body of a pen, whether it has multiple pieces or not. If I was claiming a pen with a single-piece body, I should probably say that, because otherwise a body would be understood by one skilled in the art to include things that have multiple pieces or single pieces. And that's the plain language that was used in these claims, not something any fancier than that. If I could return for a moment to the one-piece versus the molded versus separate piece, the argument there is, again, I think starts on plain meaning. If Your Honor opens up a plastic bottle this morning and have a drink, that cap has two pieces on it. It's molded as a single unit. It has a piece that stays behind on the bottle and a piece that comes off. Well, it was one piece to begin with. It was molded as a piece. It was broken. It was broken. It was molded as a piece and could have been easily tack-welded and obtained the same result. And what this invention teaches is, yes, reduce the number of parts if you can. Now, that statement, by the way, to reduce the number of parts and the single body, were in the original case as filed. Then in September, when Mr. Shaw said there's this other embodiment, he went ahead and added figure eight. He didn't remove the criticisms of the prior art that were there because those criticisms were not about his design. Those criticisms were about designs that had come before him. He didn't need to remove them. So simple language, body, part, piece, member. I would suggest my finger could be said to be a part of my hand. When you use the word part, it's often used to be part of a whole, not a separate piece. In short, there's nothing anywhere in any of the language of the original terms, body, part, member, to being something other than what would be commonly understood. There's no definition anywhere. If we look at the claims, which is what has to control this case, these claims have interesting wording, and I'd like to direct our attention to some of that. First, though, they also include words of inclusion. The claims use the word comprising. That allows additional elements. So Beck and Dickinson put a cutter at the tip of their plunger. That was an added element, not excluded by the claims. Importantly, the claims are completely silent and open-ended on the process for making this needle holder retainer. They don't say anything about how one makes it. It just says it's present in the device. And the specification, when it does talk about it, refers to use of a bridge, quote, however done, however done. So premolding a needle holder bridge and then putting it into the barrel is clearly not excluded. Mr. Harden, I'd like to ask you about the validity of Claim 25. Fine, Your Honor. Don't McGarry and Presley disclose the invention or the sole exception of this distinction between lodging and locking? No, Your Honor, and here's why. The advantage of this invention and the reason why someone can use this, a nurse with small hands, is that this is now a contained structure, but there was no additional force needed to do that lodging. And the claim language does not just say lodge. It says lodge into an open back end, an open back end. If you look at both of them, the counsel misrepresents when he said there's no question that those pieces of prior art show the elements of the claim. The ends of McGarry is not open. It has flanges that are inset to stop the cap from moving past them. And the difference was the difference between a usable device by a nurse's small hand and an unusable device. The difference was after she overcame the force to move the spring, injected the fluid, then she would have to go past the lock, that little flange in both of the McGarry reference and the Presley reference. Mr. Shaw was the first one to understand that if he took that lock off, the forces that were combining to stop an easy firing would be reduced by about a third because you don't have to lock it in. What about the Powell reference? The Powell discloses both lodging and locking. But it is not in a retractable device. And it's not just that it's not retractable. More importantly, it's not a two-position handle, which is also in Claim 25. In Powell, if one begins to move that down to withdraw fluid, for example, from a syringe, from a bottle of fluid, there's nothing that stops that handle from disappearing into the collar and being rendered ungraspable immediately. So as the inventor explained to the jury, I didn't invent the tucking handle. I invented one that didn't tuck and then tucked. That's what he said, and that's exactly correct. Because in a two-position handle, as is set forth in the claim, as the handle comes down to the first position, it stops. It doesn't go under the collar. That allows you to grasp it, pull up medication, and then push it back in. The locking aspect of the plunger in the Powers reference was down in the device and not up at the top like the McGarry. So let's look at a simple combination, if we would, of Power and McGarry, or Power and McGarry and Presley. If one would use those, one would put a collar so that you could tuck or press the thumb pad down into the collar. But there's nothing to teach one to take the locking tabs out of McGarry or out of Presley. No discussion of that at all. And the reason is because those patents don't appreciate what Mr. Shaw did appreciate, which is the extra thumb force that is required to get past those is the difference between an operable product and not an operable product. This is anticipation. This is factual, right? It is correct. Just last year we said there were experts on each side. Just last year we said if a jury is entitled to resolve a dispute of fact between experts. That's correct. So this would be a substantial evidence question? It is, Your Honor. The jury heard and accepted our experts' explanation of what the prior art showed and taught. It's not what their experts said. It's not what they say in their briefs. But the jury has already decided that point. I did want to make another point with respect to one-piece body. It's been made, but I'd like to make it one more time, and that is the terms at issue that are used in the claims are actually hollow syringe body and then one-piece hollow syringe body. So if there isn't a difference, we just throw out one piece, and that's not proper claim interpretation, but that's essentially what opposing counsel would have this court do. And I think this is very important, that one-piece body aspect of the invention is very important for a particular goal and objective, one that is set forth in multiple claims about how to manufacture the device. BD didn't use that piece, except in their one CC. In the smaller one, they did, and it was found to infringe claims to the manufacturing part. In a manufacturing device, to be able to load all these things in the back and then put the needle in the front had never been described before. It was a very important part of the invention, and it was described as such throughout the specification. And yes, Judge Lori, there is no mention in the specification or a picture of a multi-piece body. That's true. But in the very first set of claims, not just after BD put their product on the market, in the very first set of claims issued in a patent not in suit, the terms one-piece hollow syringe body and hollow syringe body were used. That's part of the specification. That clearly shows the inventor understood and was telling folks you could perhaps use two pieces or a multi-piece body. My preferred method is to use a single piece. But that's not in all the claims. For the reasons stated in our brief and those stated here today, we respectfully request that the Court affirm the lower court in all respects. Thank you, Mr. Hardin. Mr. Lee, we have your full three minutes. Thank you, Your Honor. Three points. On the retainer member, the District Court specifically rejected our proposed interpretation that the retainer member be separate. That's at A36. The question that Chief Judge Rader asked is, why couldn't that be two things that are molded together in the context of this case? The answer is at A3685 in the prosecution history. And there, to distinguish a piece of prior art, Presley, Mr. Shaw said that if you take two things and you electronically weld them together, they are not one thing. They are two separate things. So the question you asked, Your Honor, about whether you could just mold two things together, they become one, isn't that enough? No. Your Honor will see at this page, to distinguish one of the principal pieces of prior art, they distinguish two separate things, even if they're electronically welded, they say that's two separate things from one. And that applies both to the retainer member and applies to the one-piece body. And I think, Your Honor, that's the distinction between Laranjeal and this case. This is a case where we're focusing on a specification that has three different embodiments, claims in issue that only claim two. All of those claims specifically requiring a separate retainer member, a separate piece, and then a prosecution history that says if you electronically weld things together, it's not one piece. On the 077 patent, it did go to the jury, but as this Court has said before, if you have the claim and you have the prior art and they're undisputed, that's a legal question. Their expert passed at the question in this very quick portion of the trial. Here's what Your Honor has, here's what the panel has. There is no dispute between us that each and every limitation of Claim 25 is present in Presley and it's present in McGarry. The only question is this lodging concept. And there are two answers that are not dependent upon a substantial evidence burden, not dependent upon a jury verdict, and the answers are these. First, if you compare Claim 25 to Claim 28, Claim 25 has to be broader. Claim 25 precludes locking. Claim 25 should include it. In that case, they anticipate. If it doesn't, if the narrow claim interpretation is correct, then power gives. Exactly what you lost on before the jury, right? Your Honor, it's a factual question. I actually think under this Court's precedence, no, because what McGarry and Presley and Power disclosed, I mean the Court has said in other circumstances and other cases where you have simpler devices, where it's undisputed how they operate, then it's not really a substantial evidence question. It's a question of what's the legal consequence of those undisputed facts. Are you saying no reasonable jury could come out there? Yes. Is that what you're trying to say? Yes. On both this and obviousness, Power is just the prototypical KSR. Thank you, Your Honor. What's the status of the injunction now? The injunction hearing was granted. The injunction was granted but stayed. And it still stayed? It still stayed. Until we decide. Yes. Thank you very much. That concludes our morning.